UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

EXPERT CHOICE, INC.,
        -Plaintiff,


    -v-                        CIVIL 3:03CV02234(CFD)(TPS)


GARTNER, INC.,
        -Defendant.

## RULING ON DEFENDANT'S MOTION FOR PROTECTIVE ORDER AND PLAINTIFF'S MOTION TO COMPEL

Pending before the court is Defendant's Motion for Protective Order **(Dkt. #92)** and Plaintiff's Motion to Compel **(Dkt. #96)**. Defendant, Gartner, Inc. ("Gartner"), requests a Protective Order, pursuant to Rule 26(c) of the Federal Rules of Civil Procedure, to preclude the deposition of Gartner designees. Plaintiff, Expert Choice, Inc. ("ECI"), requests the Court to compel defendant to provide deposition testimony by Gartner designees and to provide full and complete responses to certain interrogatories and requests for production.

### I.   FACTS

The relevant facts, as set forth in the motions, are as follows. Gartner is an information technology, research, events and consulting company that provides clients with a variety of subscription-based publications and consulting services. Non-party Decision Drivers, Inc. ("DDI") is a wholly owned subsidiary of

Gartner, and was created to act as licensee of a software product called "Expert Choice," which is owned by a corporation bearing the same name, plaintiff Expert Choice, Inc.  ECI's software was based on a mathematical theory known as the Analytic Hierarchy Process ("AHP").  The original license agreement between ECI and DDI was created in 1995, and at that time, additional counterclaim defendant Ernest Forman ("Forman"), was both ECI's principal and on DDI's Board of Directors.

In late 1998 and early 1999, Forman (acting for ECI) and Peter Levine (another member of DDI's Board of Directors) negotiated and signed an amendment to the License Agreement (the "1998 Agreement").  The 1998 Agreement provides:

> Licensee agrees to pay Licensor a royalty (the "Royalty") of three percent (3%) of the gross revenues derived from any source whatsoever and without exclusion of any kind and in any way associated with the rights licensed under this Agreement, sales of Licensee's products and services associated with software-based decision making, Licensor Software, Expert Choice, or the analytic hierarchy process.  This royalty is to be paid monthly based on Licensee's monthly revenue.

1998 Agreement, § 3.1.  This arrangement was in effect for several years.

In October 2000, Gartner launched a decision making software product named "Decision Engine."  ECI argues that this product was a direct competitor to the Expert Choice software, while Gartner argues it was independently created and supplanted Expert Choice in the marketplace.  ECI alleges that Gartner has earned substantial revenues from this and other products, yet has failed to pay

royalties to ECI based on these revenues.

ECI brought this action against Gartner alleging that Gartner is liable to ECI for royalties that use or abuse the plaintiff's intellectual property. ECI alleges, *inter alia*, that under theories of alter ego, oral contract, or promissory estoppel, Gartner is bound by the terms of the 1998 Contract, and therefore, is liable for royalties for all decision making software products and related products and services it has sold, and that Gartner is liable in tort for similar damages, based on its misappropriation of ECI's software methodology for use in its own products. ECI argues that it should be entitled to pierce the corporate veil to hold Gartner liable for the debt of its subsidiary, DDI.

Gartner has asserted counterclaims against both ECI and Forman, as an additional counterclaim defendant. Gartner seeks a declaration that the 1998 Agreement is null and void, and alleges that ECI and Forman are liable because of Forman's breach of fiduciary duty, that ECI is liable to Gartner for attorney's fees in connection with this action, violation of Conn. Gen. Stat. § 52-570d which prohibits the non-consensual recording of phone conversations, and violation of CUTPA.

## II.   STANDARD OF REVIEW

Rule 26(b)(1) of the Federal Rules of Civil Procedure defines the scope and limitations of discovery. It states, in relevant part, that "[p]arties may obtain discovery regarding any matter,

not privileged, that is relevant to the claim or defense of any party . . . ." Fed. R. Civ. P. 26(b)(1). Furthermore, "[r]elevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." Id.

A party may object to a request if it is "overly broad" or "unduly burdensome." Charles A. Wright, et al., 8A Federal Practice & Procedure § 2174, at 297 (2d ed. 1994). To assert a proper objection on this basis, however, one must do more than "simply intone [the] familiar litany that the interrogatories are burdensome, oppressive or overly broad." Compagnie Francaise D'Assurance Pour Le Commerce Exterieur v. Phillips Petroleum Co., 105 F.R.D. 16, 42 (S.D.N.Y. 1984). Instead, the objecting party bears the burden of demonstrating "specifically how, despite the broad and liberal construction afforded the federal discovery rules, each [request] is not relevant or how each question is overly broad, burdensome or oppressive by submitting affidavits or offering evidence revealing the nature of the burden." Id. (internal citations and quotation marks omitted). See also Hickman v. Taylor, 329 U.S. 495, 507 (1947)(stating that "the deposition-discovery rules are to be accorded a broad and liberal treatment").

If a party resists or objects to discovery, Rule 37(a) of the Federal Rules of Civil Procedure provides that the other party,

"upon reasonable notice to other parties and all persons affected thereby, may apply for an order compelling disclosure or discovery . . . ." Fed. R. Civ. P. 37.  The defendant, as the objecting party, bears the burden of showing why discovery should be denied. Blakenship v. Hearst Corp., 519 F.2d 418, 429 (9th Cir. 1975).

However, the liberality of pretrial discovery means there is potential for a discovery request to impinge upon the privacy of a party.  For this reason, courts may issue protective orders which restrict permissible discovery if it would unduly annoy, embarrass or burden the other party.  Seattle Times Co. v. Rhinehart, 467 U.S. 20, 34 (1984).  Rule 26(c) of the Federal Rules of Civil Procedure states, in pertinent part, that:

> [u]pon motion by a party or by the person from whom discovery is sought, accompanied by a certification that the movant has in good faith conferred or attempted to confer with other affected parties in an effort to resolve the dispute without court action, and for good cause shown, the court . . . may make any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense . . . .

Fed R. Civ. P. 26(c).

The court is afforded broad discretion in deciding discovery issues such as whether to issue a protective order.  See Wills v. Amerada Hess Corp., 379 F.3d 32, 41 (2d Cir. 2004); Dove v. Atl. Capital Corp., 963 F.2d 15, 19 (2d Cir. 1992)(grant and nature of protection is singularly within the district court's discretion); Cruden v. Bank of New York, 957 F.2d 961, 972 (2d Cir. 1992)(order

regarding sequence of discovery at discretion of trial judge).
That said, a court may issue a protective order only after the
moving party demonstrates good cause.  <u>In re Agent Orange Prod.</u>
<u>Liab. Litig.</u>, 821 F.2d 139, 145 (2d Cir. 1987).  To establish good
cause under Rule 26(c), courts require a "particular and specific
demonstration of fact, as distinguished from stereotyped and
conclusory statements."  <u>Havens v. Metro. Life Ins. Co. (In re</u>
<u>Akron Beacon Journal)</u>, No. 94 Civ. 1402, 1995 U.S. Dist. LEXIS
5183, at *10 (S.D.N.Y. April 20, 1995)(quoting <u>Cipollone v. Liggett</u>
<u>Group, Inc.</u>, 785 F.2d 1108, 1121 (3d Cir. 1986)).

### III.  DISCUSSION

**A.  <u>Issues that are Moot</u>**

Defendant represents that there are no longer disputes
concerning Plaintiff's First Request for Production Numbers 13, 19,
20, 21, 25, 29, 34, 35, 37, 38 and 41, Plaintiff's Second Request
for Production Number 1, Plaintiff's Third Request for Production
numbers 1, 15, 16, and 17, and Plaintiff's Second Set of
Interrogatories Numbers 10 and 11.  (Def.'s Mem. Opp. Mot. 2-3.)
For this reason, the court finds that these issues are MOOT.

**B.  <u>Depositions of Corporate Designees: The February 14th Deposition</u>**
**<u>Notice</u>**

Gartner argues that the February 14[1] Rule 30(b)(6) deposition

_____

[1]
1.  Information pertaining to Gartner Consulting, including, but
not limited to:
a.  Any use of Analytic Hierarchy Process ("AHP") based

notice should be quashed because it is duplicative of the November

23 Notice, it is unduly expansive, and the subject matters noticed

---

software, Refined Hierarchical Analysis ("RHA") based software, Decision Drivers software, Decision Engine software or any other software based decision making tools by Gartner consultants;

b.  Annual revenues generated by Gartner consulting for the years 2000 to the present and a breakdown of revenues by consulting division, products or area of service;

c.  Duties, responsibilities, training and supervision of Gartner consultants; and

d.  A detailed description of all products and services offered by Gartner consulting to customers and the revenues generated by each product or service.

2.  Information pertaining to Gartner Research, including, but not limited to:

a.  Any use of Analytic Hierarchy Process ("AHP") software, Refined Hierarchical Analysis ("RHA") software, Decision Drivers software, Decision Engine software or any other software based decision making tools by Gartner analysts;

b.  Annual revenues generated by Gartner consulting for the years 2000 to the present and a breakdown of revenues by research division, products or area of expertise;

c.  Duties, responsibilities, training and supervision of Gartner analysts;

e.  [sic] A detailed description of all products and research services offered by Gartner consulting to customers, any and all tools or software used in the development, production or presentation of research products, and the revenues generated by each product or service.

3.  Gartner's Magic Quadrant and Market Scopes, including, but not limited to:

a.  A detailed description of any and all software or tools used to develop, produce or present Gartner's Magic Quadrants and Market Scopes;

b.  A detailed description of any and all software or tools used to develop, produce or present the reports offered through or with Gartner's Magic Quadrants and Market Scopes;

c.  Any and all revenues generated, realized or associated with Gartner's Magic Quadrants and/or Market Scopes.

are not relevant.  (Def.'s Mem. Supp. Mot. 1-2.)  ECI argues that
it offered to withdraw the February 14 Notice to remove any
sections that were duplicated in the February 23 Notice, and that
it submitted this new Notice because it wanted to clarify the
information that it was seeking.  (Pl.'s Mem. Supp. Mot. 24.)

Federal Rule of Civil Procedure 30(b)(6) states that in
noticing a deposition:

> A party may . . . name as the deponent a public or private
> corporation . . . and describe with reasonable particularity
> the matters on which examination is requested.  In that event,
> the organization so named shall designate one or more
> officers, directors, or managing agents . . . and may set
> forth, for each person designated, the matters on which the
> person will testify.

Fed. R. Civ. P. 30(b)(6).  According to this Rule, an entity must
make a good-faith effort to designate the person or persons with
the knowledge sought and to prepare those individuals so that they
may fully answer the questions posed on the relevant subject
matters.  Bank of New York v. Meridien Biao Bank Tanzania, Ltd.,
171 F.R.D. 135, 151 (S.D.N.Y. 1997); see also Reilly v. NatWest
Mkts. Group, Inc., 181 F.3d 253, 268 (2d Cir. 1999) , cert. denied,
528 U.S. 1119 (2000)(stating the corporate deponent has a duty "to
make available such number of persons as will be able to give
complete, knowledgeable and binding answers on its behalf.")  The
designee should be prepared to the extent knowledge is reasonably
available, whether from documents, past employees, or other
sources.  Bank of New York, 171 F.R.D. at 151.  Inadequate

testimony may amount to a failure to appear, however in order to impose sanctions for this offense, the inadequacies of the testimony must be egregious.  Id.  _____

When a corporate entity is subpoenaed, that subpoena must be quashed or modified if it subjects any person to an "undue burden." Fed. R. Civ. P. 45(3)(A)(iv).  A determination of what is "unduly burdensome" is within the court's discretion, however the court may consider factors such as, *inter alia*, relevance, breadth of the request, and the party's need for the information.  Concord Boat Corp. v. Brunswick Corp., 159 F.R.D. 44, 48-49 (S.D.N.Y. 1996). The burden to prove that a subpoena is unduly burdensome rests on the movant.  Id.

### 1.  Relevance

ECI seeks discovery regarding Gartner's sales figures and revenues for the entire universe of Gartner' consulting and research operations.  Gartner argues that although DDI's sales figures may be relevant, Gartner's are not.  The Court finds that Gartner's finances may be relevant to damages calculations, among other things, particularly if plaintiff is able to "pierce the corporate veil" and demonstrate that Gartner and DDI are in essence the same entity.  This is not to say, as Gartner suggests, that plaintiff is rewriting the 1998 Agreement to state that the payment of royalties is based on *Gartner's* sales, but rather suggests that if Gartner and DDI are found to be one and the same, in accordance

with the alter ego theory, then Gartner could stand in the shoes of DDI for all purposes with regard to the 1998 Agreement.  Plaintiff need not prove its piercing the corporate veil theory *before* discovery from Gartner is allowed, therefore discovery on the issue of Gartner's sales figures and revenues is relevant.

### 2.   Unduly Expansive

Gartner also argues that the subject matters in the February 14 Notice are so expansive as to be unmanageable, claiming it is impossible for any witness to bring such knowledge into the deposition room  (Pl.'s Mem. Opp. Mot. 9-10.)  Although deponents may not be required to memorize statistical information, the plaintiff may request production of documents reflecting such information or the production of witnesses familiar with such documents.  See 7 Moore's Federal Practice § 30.22 (Matthew Bender 3d ed. 2005)("The deposing party may require the deponent to bring documents and other materials to the deposition").  Accordingly, the Court finds that the February 14 Notice is not unduly expansive.

### 3.   Duplicative

Gartner argues that plaintiff's February 14 Notice is substantively defective because it duplicates the subject matter areas set forth in plaintiff's November 23 Notice.  In essence, plaintiff argues that the Notice is not duplicative because Gartner failed to provide proper testimony in response to the September 27

and November 23 Notices.  Plaintiff also represents that it has offered to work with defendant to remove any portions of the notice that might be duplicative.  (Pl.'s Mem. Opp. Mot. 24.)

Courts usually disfavor second depositions, however they have been permitted where there is a showing of need or good reason, or where the party opposing the deposition fails to show any undue burden or expense.  7 Moore's Federal Practice, § 30.05(1)(c)(Matthew Bender 3d ed. 2005).  In determining whether to grant a second deposition of the same party, the court should balance the burdens that such a deposition would cause on the various parties involved.  Id.  The court's power to limit discovery "must be exercised against the backdrop of the broad discovery principles embodied in Fed. R. Civ. P. 26(b)(1)." Tri-Star Pictures, Inc. v. Unger, 171 F.R.D. 94, 101 (S.D.N.Y. 1997).  However, when a second deposition is allowed, it is typically limited in scope to the topics not addressed in the first deposition.  Id.

    a.    **September 27 Deposition Notice**

In response to ECI's September 27 Notice, Gartner designated two witnesses as most knowledgeable on the topics listed: Raymond Bernstein and Kevin Volpe.[2]  One court outlined the entity's duties

---

[2]

1.    Gartner's efforts to produce documents in response to Expert Choice's Requests for Production.
2.    Gartner's policies and procedures regarding document retention or document destruction which were in effect during the time period encompassed by this lawsuit.

in designating a Rule 30(b)(6) deponent:

(1) the deponent must be knowledgeable on the subject matter identified as the area of inquiry; (2) the designating party must designate more than one deponent if necessary in order to respond to the relevant areas of inquiry specified by the party requesting the deposition; (3) the designating party must prepare the witness to testify on matters not only known by the deponent, but those that should be known by the designating party; and (4) the designating party must substitute an appropriate deponent when it becomes apparent that the previous deponent is unable to respond to certain relevant areas of inquiry.

7 Moore's Federal Practice § 30.25(3)(Matthew Bender 3d ed. 2005).

---

3.   Gartner's retention or destruction of documents responsive to Expert Choice's Requests for Production.

4.   The identification and location of Gartner documents responsive to Expert Choice's Requests for Production which have not already been produced by Gartner.

5.   The identification of any Gartner documents responsive to Expert Choice's Requests for Production which have been destroyed.

6.   The reason for implementation of any Gartner document policy that resulted in the destruction of responsive or potentially responsive documents.

7.   The existence and location of e-mails or other written or electronic communications including "deleted" e-mails, and all backups that might contain such communications, relating in any way to Expert Choice or DDI.  This request includes, but is not limited to:

   a.   Such emails to or from Jamie Popkin; Peter Levine; Regina Paoilli, Ted Fine; Norm Wattenberg, David Wright, Rupert Hilier, Kathy Cohen, Ken Siegel, Clive Taylor, Brender Wester, Manny Fernandez, Bill Clifford, Michael Fleishman, and the current Gartner CEO;

   b.   E-mails between Popkin and Paoilli prior to or following the telephone converation with Dr. Forman on 5/12/2000;

   c.   E-mails relating to the development of the 'green room' product;

   d.   E-mails or other correspondence or communications between Popkin and Wharton Valuation Associates; or

   e.   Any instructions given to Wharton Valuation Associates concerning its evaluation of the Expert Choice/DDI product.

-12-

The court finds that Gartner's designation of Bernstein and Volpe was generally in accordance with the requirements of Rule 30(b)(6) and that their respective testimony was adequate and in good faith.   In contrast, plaintiff's attempt to demonstrate the Bernstein's lack of knowledge, particularly in relation to the 14-page document retention policy (Bernstein Dep. at 11-19), was taken out of context.

The one subject area that neither Bernstein nor Volpe was knowledgeable about was Gartner's document retention and destruction policy before 1999.   (Bernstein Dep. 15, Volpe Dep. 15-26.)  Defendant argues that the deponents had no duty to testify on events prior to 1999, as no obligation to retain documents had arisen at that time.   They argue that because this case was initiated in 2003, Gartner had no reason to anticipate or to prepare for such a deposition inquiry at that time. (Def.'s Mem. Opp. Mot. 5.)

Although Gartner might not have anticipated this deposition inquiry in 1999, that does not relieve them of their duty to testify on relevant matters.  The deposition notice did not mention specific dates about which the deponent would have to testify, however the contract at issue was made in 1998, so it is reasonable to assume that events occurring in 1999 would be relevant and

potentially a subject of inquiry at the deposition.[3]  To the extent
ECI seeks more testimony on Gartner's document retention and
destruction policy before 1999, and to the extent that information
in "known or reasonably available" to the corporation, Gartner is
ORDERED to designate another deponent knowledgeable on this topic.

**b.   November 23 Deposition Notice**

In  response  to  plaintiff's  November  23  Deposition  Notice,[4]

---

[3]There is a split of authority as to the permissible scope
of examination of a Rule 30(b)(6) witness.  7 Moore's Federal
Practice, § 30.25[4] (Matthew Bender 3d ed. 2005).  This Court
concurs with the view that the Rule 30(b)(6) requirement that the
deposition notice describe topics to be examined with "reasonable
particularity" was intended to inform the entity of the topics on
which the deponent should be knowledgeable, not to restrict the
scope of examination.  King v. Pratt & Whitney, 161 F.R.D. 475,
476 (S. Dist Fl. 1995).  In other words, this language is to help
insure that the entity designates the correct deponent.

[4]

(1)   Gartner's experience with licensing of, development of,
      Decision Engine software and/or products or services
      related in any way to Analytic Hierarchy Process
      ("AHP") software, Refined Hierarchical Analysis ("RHA")
      software, or any other software-based decision tool.
(2)   The development and marketing of the Gartner products
      and services known as "Decision Tools for Vendor
      Selection."
(3)   Gartner's products, services or any other sources of
      revenue that could arguably be encompassed by the 1998
      contract between DDI and Expert Choice, including but
      not limited to, any and all software-based decision
      tools, Gartner's franchise program, consulting
      services, and the amount of revenues generated by all
      such services and programs.
(4)   Revenues received by Gartner or entities it controls
      from the products and services known as Decision Tools
      for Vendor Selection and from any other software-based
      decision tools or aides or related consulting services.
(5)   Information about the development and functionality of
      the "clean room" product [as claimed by Gartner] and
      its successors . . . .

-14-

Gartner produced two witnesses, James Lebinski and Catherine Baker. Lebinski was proffered to testify about topics (1), (2), (5), and the products and services portion of topic (3) (Def.'s Mem. Opp. Mot. 12), while Catherine Baker was designated to address revenue generated by Gartner software products, services and programs. (Pl.'s Mem. Supp. Mot. 17.)

The Court's review of the deposition transcripts reveals that although Mr. Lebinski's testimony was compliant with the Notice, Ms. Baker's testimony was not.  Ms. Baker testified about DDI and decision tool revenue, but was not prepared to discuss Gartner revenues from 1998 to the present, such as revenues derived from Decision Engine or Magic Quadrants. (Baker Dep. 36, 47-80.) Although Ms. Baker's testimony was inadequate, it was not provided in bad faith.

In sum, the Court finds that the plaintiff has shown a need for further depositions because Catherine Baker's testimony was insufficient, Bernstein and Volpe's testimony was partially deficient as to Gartner's document retention and destruction policy before 1999, and there are portions of the February 14 Notice that are not unreasonably cumulative or duplicative of the other depositions.  Further, the defendant has not met its burden to prove that the February 14 Notice is unduly burdensome, and the plaintiff's need for additional depositions outweighs any harm resulting from the fact that plaintiff failed to request leave of

the court before issuing the February 14 Notice.[5]

The plaintiff is ORDERED to work with the defendant to remove the redundant portions of the February 14 Notice, namely the sections concerning Gartner's use of AHP in its products or services (November 23 Notice: ¶1; February 14 Notice: ¶¶1a, 2a ), as Mr. Lebinski has already testified on these topics. (See, e.g., Lebinski Dep. 19, 86-89, 109-110, 115-16, 124, 162-65, 172, 184-187, 199-201). Allowing Expert Choice to re-formulate these same questions for another deponent would be equivalent to giving them a "second bite at the apple" because counsel failed to make reasonable inquiry at the first deposition.

Although the February 14 Notice is duplicative concerning Gartner revenues keyed to specific products or services, Expert Choice has shown "good reason" why this portion of the February 14 Notice should be permissible (i.e., that Baker's testimony was insufficient on these matters). (November 23 Notice: ¶¶3, 4; February 14 Notice: ¶¶1b, 1d, 2b, 2e, 3c.) The defendant is

---

[5]Defendant argued that plaintiff's February 14 Notice is procedurally defective because plaintiff did not request leave of the court before filing it, in accordance with Federal Rule of Civil Procedure 30(a)(2)(B). Rule 30(a)(2)(B) states that a party must obtain leave of the court to take the deposition of a person who has already been deposed in the case, unless the parties stipulate in writing to the second deposition. Fed. R. Civ. P. 30(a)(2)(B). This rule applies to an entity being deposed pursuant to Rule 30(b)(6), although a second deposition will be allowed if the discovery sought is not unreasonably cumulative or duplicative, or if it is not available from another source. 7 Moore's Federal Practice, § 30.05(1)(c)(Matthew Bender 3d ed. 2005).

ORDERED to produce an appropriate deponent to respond to the remaining portions of the February 14 Notice and to designate a substitute deponent for Ms. Baker.  Any harm to Gartner in producing another deponent is outweighed by plaintiff's right to conduct meaningful discovery.  Gartner is ORDERED to choose a deponent more knowledgeable on revenues earned by Gartner, not just by DDI, and Gartner shall better prepare this substitute deponent for the deposition.

### C.   Remaining Disputes Over Document Production and Responses to Interrogatories

### 1.   Plaintiff's Second Set of Interrogatories:  Interrogatory 14 & 15[6]

In response to Interrogatory 14, Gartner claims that it "has previously provided plaintiff with a list of all DDI products which Gartner believes encompasses all software based decision making products, and is voluntarily supplementing its production with documents in Gartner's possession which describe such products."

---

[6]
Interrogatory 14:
    Please list and describe in detail every product, service or tool offered by Gartner, Inc. or any Gartner subsidiary from January 1, 1998 through the present, that is based on or uses any decision making technology, methodology or software."  Defendant objected to this interrogatory on the grounds that it is vague, ambiguous, overly broad, answering it would be unduly burdensome, and it is not relevant.
Interrogatory 15:
    For each product, tool or service listed in response to Interrogatories 17, 18, and 19(sic)[12, 13, and 14], please state the gross annual revenues derived by Gartner or its subsidiaries from each product, tool, or service, for each year from 1998 to the present.

(Def.'s Mem. Opp. Mot. 28).   However, Interrogatory 14 does not request a list of all *DDI* products, but rather a list of all *Gartner* products, therefore Gartner's response is insufficient. Gartner also argues that the interrogatory fails to define "decision making technology, methodology or software."   To the extent ECI is able to more accurately define its terms, it is ORDERED to do so.

Gartner responded to Interrogatory 15 by claiming that it is confusing, vague, and overly broad in that it seeks revenue information concerning the products, tools or services listed in Interrogatory No. 14.   Gartner asserts that it has produced responsive information by producing gross revenue information for DDI products.   Again, Interrogatory 15 refers to *Gartner* products, not just *DDI* products, so this response is not sufficient.   To the extent Gartner is able to answer Interrogatory 14, it shall also provide the corresponding information requested in Interrogatory 15.

Gartner is ORDERED to respond to Interrogatory 14 and 15.   If the defendant does not have the desired information, it shall indicate as such in its response.   The Court will rely on this representation, as Federal Rule of Civil Procedure 11(b) requires that attorneys certify that the factual representations and denials of factual contentions they make in motions to the court are supported by evidence.   Fed. R. Civ. P. 11(b)(3)-(4).

**2.   Plaintiff's Third Request for Production of Documents**

    **a.   Request Nos. 4, 5 and 6**[7]

Gartner argues that these requests are confusing, overly broad, and irrelevant.  The defendant's relevance arguments are again without merit.  Next, Gartner argues that it cannot determine who constitutes "DDI clients" versus "Gartner clients."  To the extent Gartner has this information available, it is ORDERED to provide it.  If Gartner does not have its information classified in this manner, or cannot readily sort information in its databases to create such a document, it may indicate as such in its response. Again, Gartner may not be required to provide information that it does not have.

    **b.   Request No. 21**

Request No. 21 asks for "[a]ll documents that evidence, refer to, reflect, memorialize or relate to the conception and

---

[7]
Request No. 4:
    All documents that evidence, refer to, reflect, memorialize or relate to any and all documents listing or referencing DDI clients who became Gartner clients after November 2000.
Request No. 5:
    All documents that evidence, refer to, reflect, memorialize or relate to any and all documents listing or showing revenue received by Gartner, from each DDI client who became Gartner clients after November 2000."
Request No. 6:
    All documents that evidence, refer to, reflect, memorialize or relate to any and all documents, including invoices, listing or referencing former DDI clients who became a Gartner client after November 2000 and the products or services provided or sold by Gartner to each former DDI client."

development of Gartner's Magic Quadrant." Gartner argues that the
Magic Quadrant is a graphical depiction of Gartner research
findings, is not a software product or service, and does not have
a revenue stream. Further, Gartner argues that the first graphic
of this type was published twelve (12) years before the 1998
Agreement at issue here. ECI argues that Magic Quadrants are
"hallmarks of presentation of Gartner Research" and Gartner clients
pay for Magic Quadrant requests and the underlying analysis.

The Court finds that, as ECI explains, the Magic Quadrant "is
a presentation of research services from which Gartner derives
revenue," and Gartner's revenue is relevant for reasons previously
articulated in this opinion. (Pl.'s Redacted Reply Mem. 10.)
Because Gartner's Magic Quadrants represent a service associated
with Decision Drivers/Decision Engine and the AHP/RHA process, they
potentially fall within the scope of the 1998 Contract and
therefore also ECI's claims in this case. However, the time span
of the request is overbroad, and therefore unduly burdensome.
Defendant is ORDERED to respond to Request No. 21 for the four year
time period from 1996 to 2000.

### IV.   CONCLUSION

Based on the foregoing, Defendant's Motion for Protective
Order **(Dkt. #92)** and Plaintiff's Motion to Compel **(Dkt. #96)** are
both **GRANTED in part** and **DENIED in part**.

This is not a recommended ruling. This is a discovery ruling

and order reviewable pursuant to the "clearly erroneous" standard of review.  28 U.S.C. § 636(b)(1)(A); Fed. R. Civ. P. 6(a), (e) and 72(a); and Rule 2 of the Local Rules for U.S. Magistrate Judges. As such, it is an order of the court.  <u>See</u> 28 U.S.C. § 636(b)(written objections to ruling must be filed within ten days after service of same).

**IT IS SO ORDERED.**

**Dated at Hartford, Connecticut this \_\_\_\_\_ day of June, 2006.**

_____

**THOMAS P. SMITH**
**UNITED STATES MAGISTRATE JUDGE**