**UNITED STATES DISTRICT COURT**

**DISTRICT OF CONNECTICUT**

**EXPERT CHOICE, INC.,**
    **-Plaintiff**

  **-v-**                                 **CIVIL 3:03CV02234(CFD)(TPS)**

**GARTNER, INC.,**
    **-Defendant.**

### RULING ON MOTION OF EXPERT CHOICE AND ERNEST FORMAN TO COMPEL CERTAIN DOCUMENTS WITHHELD BY DEFENDANT

Pending before the court are three versions of a motion by Plaintiff/Counterclaim-Defendant Expert Choice, Inc. ("ECI") and Counterclaim-Defendant Ernest Forman ("Forman") to compel certain documents withheld by Defendant/Counterclaim-Plaintiff Gartner, Inc. ("Gartner"). **(Dkt. ## 128, 135 and 138).** The redacted version of the motion is listed as **Dkt. # 128,** the unredacted version is listed as **Dkt. # 135,** and a supplement to the motion is listed as **Dkt. # 138.** Pursuant to Rule 37(a) of the Federal Rules of Civil Procedure, Local Rule 37(a), and Paragraph 17 of the November 5, 2004 Protective Order Regarding Confidential Information and Documents ("Protective Order"), ECI and Forman request the Court to order:

    a)    an *in camera* review of a set of documents which Gartner asserts was inadvertently produced to opposing counsel and to which Gartner subsequently asserted attorney-client privilege and work product doctrine;

b) an *in camera* review of a set of documents withheld by Gartner on the basis of privilege but which ECI and Forman believe to fall within the crime-fraud exception; and

c) an order compelling Gartner to produce all documents currently being withheld as privileged and which evidence knowledge by relevant counsel of a particular contract, on the grounds that Gartner has waived the attorney-client privilege with respect to those documents by placing the contract at issue by way of an offensive counterclaim.[1]

On February 21, 2007, the Court ordered Gartner to submit for *in camera* review all documents responsive to the plaintiff's discovery requests that were currently being withheld on the basis of the attorney-client privilege and/or work-product doctrine.

## I. FACTS

The relevant facts, as set forth in the motions, are as follows. Gartner is an information technology, research, events and consulting company that provides clients with a variety of

---

[1] The motion also requests an order compelling Gartner to produce certain backup tapes ostensibly housing electronic copies of responsive documents. Gartner represents that the parties, through counsel, have agreed to work cooperatively on this issue and that no action is currently required by the court. (Def.'s Mem. Opp. Mot. 49). Thus, the court finds that this issue is moot.

subscription-based publications and consulting services. Non-party Decision Drivers Incorporated ("DDI") is a wholly owned subsidiary of Gartner, and was created to act as licensee of a software product called "Expert Choice," which is owned by a corporation bearing the same name, plaintiff Expert Choice, Inc. The Expert Choice software was marketed by DDI under the name "Decision Drivers." ECI's software was based on a mathematical theory known as the Analytic Hierarchy Process ("AHP"). The original license agreement between ECI and DDI was created in 1995, and at that time, additional counterclaim defendant Ernest Forman ("Forman") was both ECI's principal and on DDI's Board of Directors.

In late 1998 and early 1999, Forman (acting for ECI) and Peter Levine (another member of DDI's Board of Directors) negotiated and signed an amendment to the License Agreement (the "1998 Agreement"). The 1998 Agreement provides:

> Licensee agrees to pay Licensor a royalty (the "Royalty") of three percent (3%) of the gross revenues derived from any source whatsoever and without exclusion of any kind and in any way associated with the rights licensed under this Agreement, sales of Licensee's products and services associated with software-based decision making, Licensor Software, Expert Choice, or the analytic hierarchy process. This royalty is to be paid monthly based on Licensee's monthly revenue.

1998 Agreement, § 3.1. This arrangement was in effect for several years.

In October 2000, Gartner launched a decision making software product named "Decision Engine." ECI argues that Decision Engine was a direct competitor to the Expert Choice and Decision Drivers

software and was the result of a fraudulent misappropriation of ECI's intellectual propery, while Gartner argues it was independently created and supplanted Expert Choice in the marketplace. ECI alleges that Gartner has earned substantial revenues from this and other products, yet has failed to pay royalties to ECI based on these revenues.

ECI brought this action against Gartner alleging that Gartner is liable to ECI for royalties that use or abuse the plaintiff's intellectual property. ECI alleges, *inter alia*, that under theories of alter ego, oral contract, or promissory estoppel, Gartner is bound by the terms of the 1998 Contract, and therefore, is liable for royalties for all decision making software products and related products and services it has sold, and that Gartner is liable in tort for similar damages, based on its misappropriation of ECI's software methodology for use in its own products. ECI argues that it should be entitled to pierce the corporate veil to hold Gartner liable for the debt of its subsidiary, DDI.

Gartner has asserted counterclaims against both ECI and Forman, as an additional counterclaim defendant. Gartner seeks a declaration that the 1998 Agreement is null and void, and alleges that ECI and Forman are liable because of Forman's breach of fiduciary duty, that ECI is liable to Gartner for attorney's fees in connection with this action, violation of Conn. Gen. Stat. § 52-570d which prohibits the non-consensual recording of phone

conversations, and violation of CUTPA.

## II.  STANDARD OF REVIEW

Rule 26(b)(1) of the Federal Rules of Civil Procedure defines the scope and limitations of discovery.  It states, in relevant part, that "[p]arties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party . . . ."  Fed. R. Civ. P. 26(b)(1). The party asserting either attorney-client privilege or work-product protection bears the burden of proving all essential elements of the privilege or protection.  In re Horowitz, 482 F.2d 72, 82 (2d Cir. 1973). However, as is the case here, a federal court sitting in diversity must apply state privilege law to determine if waiver of the attorney-client privilege has occurred. Fed. R. Evid. 501; Sobol v. E.P. Dutton, Inc., 112 F.R.D. 99, 102 (S.D.N.Y. 1986).  As the defendant points out, Connecticut, the forum state, has adopted the "most significant relationship test" to determine choice of law issues.  Dugan v. Mobile Med. Testing Servs., Inc., 265 Conn. 791, 800-02 (2003); Interface Flooring Sys., Inc. V. Aetna Cas. & Sur. Co., 261 Conn. 601, 608-09 (2002).  The Court finds that Connecticut has the most significant relationship to the issues raised by the parties because all privileged communications took place in Connecticut, the parties' contractual and business relationship was centered in Connecticut, and DDI's principal place of business is in Connecticut.

## III. DISCUSSION

### A. Waiver of Attorney-Client Privilege with Respect to Documents Produced by Gartner and Subsequently Recalled as Privileged

The court has conducted an *in camera* review of a discrete set of documents which Gartner originally produced but later recalled on the basis of privilege and inadvertent production. On April 19, 2006, counsel for Gartner produced two disks to plaintiff's counsel. On August 22, 2006, plaintiff's counsel notified Gartner's counsel of the existence of three documents that Gartner had produced which were marked "Attorney-Client-Privileged." On August 24, 2006, the defendant's counsel requested, under the terms of the November 5, 2004 protective order, that plaintiff's counsel return the three documents plus an additional eight documents, and destroy all copies and notes thereof, on the grounds that the documents were inadvertently produced and are protected from discovery by the attorney-client privilege and/or work product doctrine.

On August 29, 2006, plaintiff's counsel returned all of the disputed documents, along with all copies of the disk on which they were contained. Upon further examination of the disk, defendant's counsel identified three additional documents which, according to defendant's counsel, were inadvertently produced and are privileged. On September 6, 2006, defendant's counsel requested

that plaintiff's counsel return the additional protected documents and destroy all copies and notes thereof. Plaintiff's counsel again complied with this request. The plaintiffs then requested an *in camera* review of the aforementioned documents in order to determine whether Gartner waived the attorney client privilege by inadvertent production.

To determine whether an inadvertent disclosure waived the attorney-client privilege, courts in Connecticut and the Second Circuit balance the following factors: (1) the reasonableness of the precautions to prevent inadvertent disclosure; (2) the time taken to rectify the error; (3) the scope of the discovery and the extent of the inadvertent disclosure; and (4) overreaching issues of fairness. Harp v. King, 266 Conn. 747, 768-69 (2003); Lois Sportswear, U.S.A., Inc. v. Levi Strauss & Co., 104 F.R.D. 103, 105 (S.D.N.Y. 1985); accord, e.g., United States v. United Techs. Corp., 979 F.Supp. 108, 115-16 (D. Conn. 1997).

After due consideration of the above-referenced factors, the court finds the factors to weigh heavily in favor of the defendant, and thus the plaintiff's claim of waiver by inadvertent production fails. Daniel Fox, one of the defendant's attorneys, represents that the defendant produced more than 180,000 pages of documents to the plaintiff in paper form, enough to fill more than 65 banker's boxes, and that he personally reviewed all of the documents for privilege. At the request of plaintiff's previous counsel,

defendant's counsel produced two disks containing what defendant's counsel believed were electronic copies of paper documents that had previously been reviewed for privilege and produced. Defendant's counsel used reasonable measures to prevent the inadvertent disclosure of privileged material through its review of over 180,000 pages of documents, and the handful of documents inadvertently disclosed "pales by comparison" <u>Deere & Co. V. MTD Prods., Inc.</u>, No. 00Civ.5936 (LMM)(JCF), 2003 U.S. Dist. Lexis 13325 at *3 (S.D.N.Y. Aug. 1, 2003). Moreover, upon receiving notice by opposing counsel of the existence of potentially privileged documents within the documents already produced, defendant's counsel moved quickly to recover the documents and undertake a further review of the electronic disks in order to determine whether any additional privileged materials had been inadvertently produced.

Finally, the governing protective order expressly states that the inadvertent production of privileged documents shall not constitute a waiver, "provided that the producing party promptly makes a good-faith representation that such production was inadvertent or mistaken and takes prompt remedial action to withdraw the disclosure." (Dkt. # 44 at ¶17). The defendant has acted in conformity with these requirements. Accordingly, Gartner did not waive the attorney-client privilege with respect to the set of documents which it inadvertently produced and subsequently

recalled.

## B. Waiver of Attorney-Client Privilege based on the Crime-Fraud Exception

The plaintiffs requested, and were grated, an *in camera* review of the documents withheld by the defendant on the basis of attorney-client privilege, in order to determine whether the privilege as to certain documents should be waived under the crime-fraud exception. Specifically, the plaintiffs argued that certain withheld documents may contain communications which were made with the intent to perpetrate a fraudulent misappropriation of Expert Choice's intellectual property, and that the communications were made in furtherance thereof.

As previously discussed, a federal court sitting in diversity must apply state privilege law to determine if a waiver of the attorney-client privilege has occurred. Fed. R. Evid. 501; EDO Corp. v. Newark Ins. Co., 145 F.R.D. 18, 21 (D.Conn. 1992). The Connecticut Supreme Court has made clear that it has adopted the Second Circuit's extension of the crime-fraud exception to civil fraud. See Olson v. Accessory Controls & Equipment Corp., 254 Conn. 145, 169 (2000); Hutchinson v Farm Family Cas. Ins. Co., 273 Conn. 33, 39 (2005). "The crime-fraud exception permits abrogation of the attorney-client privilege solely upon a determination...that there is probable cause to believe that the privileged communications were made with the intent to perpetrate a civil fraud and that the communications were made in furtherance of that

fraud." Olson 254 Conn. at 174. The burden of proof with regard to both prongs of the test rests with the party seeking disclosure of the privileged materials. Hutchinson 273 Conn. at 39.

After an exhaustive *in camera* review of over two hundred documents, the Court finds that the plaintiff has failed to meet its burden of showing probable cause that the communications at issue were made with the intent to perpetrate a crime or fraud, and that the communications were made in furtherance of that crime or fraud. The Court exercises its discretion to withhold further comment on the content of the privileged documents.

## C. Request for an Order Compelling Production of Documents Evidencing Knowledge or Use by Counsel of the 1998 Agreement

ECI and Forman have also moved for an order compelling production of any and all documents withheld as privileged that evidence knowledge by relevant counsel of the 1998 Agreement, on the grounds that the defendant has placed the contract at issue by way of an offensive counterclaim and has therefore waived the attorney-client privilege with respect to those documents. Specifically, Gartner has alleged in its counterclaim that Mr. Forman engaged in a prohibited "interested director transaction" when he executed the 1998 Agreement between Expert Choice and DDI. (Counterclaim ¶19). At the time, Mr. Forman was both a principal shareholder of Expert Choice and a member of the DDI board of directors. Gartner's counterclaim further alleges that Mr. Forman, acting for Expert Choice, and Mr. Levine, the then-President of

DDI, "concealed their negotiations over and their execution of the 1998 Agreement from other members of DDI's board of directors and from the officials at Gartner..[and] counsel for DDI and/or Gartner." (Counterclaim ¶16). Expert Choice and Forman assert that, by virtue of the factual allegations in the counterclaim, Gartner has waived its right to claim privilege with respect to any documents evidencing knowledge or use by relevant counsel of the 1998 Agreement.

The Connecticut Supreme Court has opined that the attorney-client privilege "was created to encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observation of law and administration of justice...Exceptions to the attorney-client privilege should be made only when the reason for disclosure outweighs the potential chilling of essential communications." Metropolitan Life Ins. Co. v. Aetna Cas. & Sur. Co., 249 Conn. 36, 52 (1999) (internal citation omitted). Thus, the "at issue" exception to the attorney-client privilege is "invoked only when the contents of the legal advice is integral to the outcome of the legal claims of the action . . . [such as] when a party specifically pleads reliance on an attorney's advice as an element of a claim or defense, voluntarily testifies regarding portions of the attorney-client communication, or specifically places at issue, in some other manner, the attorney-client relationship.

Hutchinson, 273 Conn. at 39.

The contents of the legal advice rendered by DDI and/or Gartner's counsel is not "integral to the outcome" of Gartner's counterclaim. Metro. Life Ins. Co., 249 Conn. at 52-53. To the contrary, there are other sufficient ways in which the factual basis for Gartner's counterclaim may be evaluated without the examination of privileged communications. The counterclaim alleges that Mr. Forman and Mr. Levine concealed their negotiations and execution of the 1998 Agreement from other members of DDI's board of directors, officials at Gartner, and counsel for DDI and/or Gartner. (Counterclaim ¶16). Thus, Mr. Forman himself can testify as to any communications he had with Gartner, DDI, and/or their counsel regarding the 1998 Agreement. Moreover, ECI and Mr. Forman may take full discovery of Mr. Levine to determine what communications he had with agents of DDI and Gartner regarding the agreement, and they may depose every relevant employee at Gartner and DDI to investigate their knowledge of the agreement. In addition, it is Gartner's knowledge, not its counsel's knowledge, that is relevant to Expert Choice and Forman's affirmative defenses of ratification, estoppel and statute of limitations. As such, the privileged communications are not "actually required for a truthful resolution of the issue." Id. at 53. The plaintiffs' request for an order compelling production of documents evidencing knowledge or use by counsel of the 1998 Agreement is therefore

denied.

## D. Documents Erroneously Withheld as Privileged by Gartner which Must Be Produced

During the course of its *in camera* review of documents withheld by Gartner on the basis of attorney-client privilege and work product, the Court has identified a significant number of e-mails which were improperly withheld. In asserting a claim of privilege, counsel must take care not to withhold unprivileged information. It is not proper to withhold an entire document from discovery on grounds that a portion of it may be privileged. Where a document purportedly contains some privileged information, the unprivileged portions of the document must be produced during discovery. The proper procedure in such instances is to redact the allegedly privileged communication, and produce the redacted document.

Under Connecticut Law, the attorney-client privilege "protects both the confidential giving of advice by an attorney acting in the capacity of a legal advisor to those who can act on it, as well as the giving of information to the lawyer to enable counsel to give sound and informed advice." PSE Consulting, Inc. v. Frank Mercede & Sons, Inc., 267 Conn. 279, 329 (2004). In addition, four criteria must be met in order for the attorney-client privilege to apply to a corporate entity: (1) the attorney must be acting in a professional capacity for the corporation; (2) the communication must be made to the attorney by current employees or officials of

the corporation; (3) the communication must relate to the legal advice sought by the corporation from the attorney; and (4) the communication must be made in confidence." <u>Shew v. Freedom of Information Commission</u>, 245 Conn. 149, 159 (2003). The burden of proving each element of the privilege rests with the party asserting it. <u>State v. Hanna</u>, 150 Conn. 457, 466 (1963).

During its *in camera* review, the Court identified certain e-mails which were withheld as privileged apparently under the misguided assumption that all e-mails to or from an attorney are privileged. "Including an attorney on the distribution list of an interoffice memo, Cc'ing a [sic] numerous people who are ancillary to the discussion, one of whom happens to be an attorney, or forwarding an e-mail several times until it reaches an attorney does not amount to 'attorney client communication.'" <u>In Re Gabapentin Patent Litigation</u>, 214 F.R.D. 178 (2003). Therefore, the following e-mails and attached documentation were erroneously withheld by Gartner based on the attorney-client privilege and must be produced to the plaintiffs within ten (10) days hereof:

Document #30: The e-mails in the chain including, and occurring before, Jamie Popkin's e-mail on December 15, 1999.

Document #36: The e-mails in the chain including, and occurring before, Ernest Forman's e-mail on January 3, 2000 at 5:09 P.M.

Document #47: Entire document.

Document #49: The e-mails in the chain including, and occurring before, Ernest Forman's e-mail on September 10, 2000.

Document #57: The e-mails in the chain including, and occurring before, Ernest Forman's e-mail on November 30, 2000.

Document #61: The e-mails in the chain including, and occurring before, Theolyn Prince's e-mail on January 2, 2001.

Document #69: Entire document.

Document #87: Entire document.

Document #89: Entire document.

Document #90: E-mail from Kirsten Recknagel and attached Gartner document.

Document #93: Entire document.

Document #96: The e-mail from Brenda Webster.

Document #98: The e-mail from Sharon Catmull.

Document #99: All e-mails in the chain except for Clive Taylor's e-mail on May 15, 2003 at 11:43 A.M.

Document #104: The e-mails in the chain including, and occurring before, Greg Brennan's e-mail on September 25, 2003.

Document #109: Entire document.

Document #110: Entire document.

Document #112: The e-mails in the chain including, and occurring before, Sharon Catmull's e-mail on October 9, 2003.

Document #114: The e-mail from Linda Brown.

Document #116: The e-mails in the chain including, and

occurring before, Greg Brennan's e-mail on November 5, 2003.

Document #180: Entire document.

Document # 193: Entire document.

### IV. CONCLUSION

Based on the foregoing, Plaintiffs ECI and Forman's Motions to Compel **(Dkt. ## 128, 135 and 138)** are **DENIED**. However, defendant Gartner is **ORDERED** to produce the above-referenced improperly withheld documents to the plaintiffs within ten (10) days hereof.

This is not a recommended ruling. This is a discovery ruling and order reviewable pursuant to the "clearly erroneous" standard of review. 28 U.S.C. § 636(b)(1)(A); Fed. R. Civ. P. 6(a), (e) and 72(a); and Rule 2 of the Local Rules for U.S. Magistrate Judges. As such, it is an order of the court. See 28 U.S.C. § 636(b)(written objections to ruling must be filed within ten days after service of same).

**IT IS SO ORDERED.**

**Dated at Hartford, Connecticut this 27th day of March, 2007.**

**/s/ Thomas P. Smith**
**THOMAS P. SMITH**
**UNITED STATES MAGISTRATE JUDGE**